1

2

3

4

5

6

7

8

9

10

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ELAINE DOUGAN, for Herself, as a
Private Attorney General, and/or On Behalf
Of All Others Similarly Situated,

Plaintiff,

v.

THE CHILDREN'S PLACE, INC.,

Defendant.

Case No.  2:20-cv-00818

**DEFENDANT THE CHILDREN'S PLACE, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

NOTE ON MOTION CALENDAR:
Friday, August 7, 2020

ORAL ARGUMENT REQUESTED

**DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818**

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................... 1

II.   BACKGROUND ......................................................................... 2

A.    The MPR Program and Its Terms and Conditions.................................. 2

B.    Plaintiff's Membership and Affirmative Assent to the Terms and Conditions .......................................................................... 2

1.    Plaintiff Assented to the Terms and Conditions When She Enrolled in the MPR Program in One of TCP's Physical Stores ........................... 2

C.    The Terms and Conditions Contain an Agreement to Arbitrate ........................... 3

D.    Plaintiff's Claims ........................................................... 4

III.  LEGAL STANDARD FOR COMPELLING ARBITRATION ...................................... 5

IV.   PLAINTIFF SHOULD BE COMPELLED TO INDIVIDUALLY ARBITRATE HER CLAIMS ......................................................... 7

A.    Plaintiff Entered Into a Valid Arbitration Agreement with TCP........................... 7

1.    Plaintiff Assented to the Terms and Conditions Containing an Arbitration Provision .......................................................... 7

a.    Plaintiff Had Notice of the Arbitration Provision in the Terms and Conditions ................................................. 8

b.    Plaintiff Unambiguously Manifested Her Assent to the Terms and Conditions .................................................. 11

2.    The Arbitration Agreement Contains a Valid Delegation Clause ........... 12

B.    Plaintiff's Claims Are Within the Scope of the Arbitration Agreement.............. 13

C.    This Action Should Be Stayed Pending Arbitration........................................... 14

V.    CONCLUSION............................................................................ 15

**DEF.'S MOTION TO COMPEL ARBITRATION**
**& STAY PROCEEDINGS**
**CASE NO. 2:20-CV-00818**

i.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Protein Recovery, LLC v. PureTek Corp.*,
  2014 WL 2011235 (W.D. Wash. 2014) ................................................................14

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995) .................................................................................................5

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..........................................................................................5, 6, 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) .................................................................................................7

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ..............................................................................13

*Britton v. Co-op Banking Grp.*,
  4 F.3d 742 (9th Cir. 1993) .....................................................................................14

*Chiron Corp. v. Ortho Diagnostic Sys.*,
  207 F.3d 1126 (9th Cir. 2000) .......................................................................6, 7, 14

*Comedy Club, Inc. v. Improv W. Assocs.*,
  553 F.3d 1277 (9th Cir. 2009) ................................................................................7

*Dean Witter Reynolds v. Byrd*,
  470 U.S. 213 (1985) .................................................................................................6

*Diaz v. Nintendo of Am. Inc.*,
  2020 WL 996859 (W.D. Wash. Mar. 2, 2020) ......................................................15

*Ekin v. Amazon Svcs., LLC*,
  2015 WL 11233144 (W.D. Wash. Feb. 10, 2015) .................................................14

*Ekin v. Amazon Svcs., LLC*,
  84 F. Supp. 3d 1172 (W.D. Wash. Dec. 10, 2014) .................................................6

*Fagerstrom v. Amazon.com, Inc.*,
  141 F. Supp. 3d 1051 (S.D. Cal. 2015) .................................................................10

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ..............................................................................................7, 8

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000) .................................................................................................12

**DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818**

i.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
  552 U.S. 576 (2008)..............................................................................................6

*Harbers v. Eddie Bauer, LLC*,
  2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) ......................................... *passim*

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019).........................................................................................12

*Hill v. Gateway 2000, Inc.*,
  105 F.3d 1147 (7th Cir. 1997) ...........................................................................11

*JP Morgan Chase Bank, N.A. v. Jones*,
  2016 WL 1182153 (W.D. Wash. Mar. 28, 2016) ................................................14

*Keystone Land & Dev. Co. v. Xerox Corp.*,
  94 P.3d 945 (Wash. 2004).....................................................................................8

*Krause v. Expedia Grp., Inc.*,
  2019 WL 4447317 (W.D. Wash. Sept. 17, 2019)................................................12

*M.A. Mortensen Co. v. Timberline Software Corp.*,
  998 P.2d 305 (Wash. 2000)..............................................................................9, 11

*MediVas, LLC v. Marubeni Corp.*,
  741 F.3d 4 (9th Cir. 2014) ..................................................................................14

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ............................................................................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)......................................................................................6, 13, 14

*Norcia v. Samsung Telecomms. Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) ..............................................................................7

*Peters v. Amazon Svcs. LLC*,
  2 F. Supp. 3d 1165 (W.D. Wash. 2013)................................................................7

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967).............................................................................................5

*Rent-A-Ctr., W, Inc. v. Jackson*,
  561 U.S. 63 (2010)..............................................................................................12

**DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS**
**CASE NO. 2:20-CV-00818**

ii.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Rep. of Nicaragua v. Standard Fruit Co.*,
  937 F.2d 469 (9th Cir. 1991) ........................................................................................7

*Schmidt v. Samsung Elecs. Am., Inc.*,
  2017 WL 2289035 (W.D. Wash. May 25, 2017)........................................8, 9, 10, 11

*Schwartz v. Comcast Corp.*,
  256 F. App'x 515 (3d Cir. 2007) ..................................................................................8

*Shearson Am. Express, Inc. v. McMahon*,
  482 U.S. 220 (1987)....................................................................................................14

*Skagit State Bank v. Rasmussen*,
  745 P.2d 37 (Wash. 1987) (en banc)............................................................................8

*United States v. Fidelity & Deposit of Maryland*,
  2016 WL 6298790 (W.D. Wash. Oct. 27, 2016) ..........................................................6

*Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. Yakima*,
  858 P.2d 245 (1993) (en banc)......................................................................................8

*Zuver v. Airtouch Commc'ns, Inc.*,
  103 P.3d 753 (Wash. 2004) (en banc).........................................................................13

**Statutes**

9 U.S.C.
  § 2.............................................................................................................................6, 12
  § 3...........................................................................................................................14, 15

Am. Law ..........................................................................................................................12

Federal Arbitration Act ............................................................................................ *passim*

Washington Commercial Electronic Mail Act (RCW 19.190)........................................5

Washington Consumer Protection Act (RCW 19.86).....................................................5

**Other Authorities**

Restatement (Second) of Contracts § 30.......................................................................11

**DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818**

iii.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## I.     INTRODUCTION

Defendant The Children's Place, Inc. ("TCP"), by and through its undersigned counsel, respectfully moves to compel Plaintiff Elaine Dougan ("Plaintiff") to arbitrate the claims raised in her Complaint filed on May 30, 2020 (Dkt. No. 1 ("Complaint")).  Plaintiff cannot proceed with her claims before this Court.  She must instead proceed in individual arbitration before the Judicial Arbitration Mediation Services, Inc. ("JAMS") pursuant to the arbitration agreement contained in a valid and enforceable contract between Plaintiff and TCP.  TCP respectfully requests that the Court issue an order compelling Plaintiff to arbitration and staying this action in the interim.

TCP is a specialty apparel retailer that sells apparel, accessories, footwear and other items for infants and children.  In its online and retail stores, TCP sells high-quality merchandise at value prices.  The crux of the Complaint is that TCP sent emails to Plaintiff and Washington consumers containing allegedly false or misleading information in the subject lines about discounts on merchandise.  Plaintiff claims the advertised discounts are misleading and violate Washington law because TCP lists a higher purported "former" price next to the sale price, but TCP rarely offers the merchandise at the higher "former" price.

TCP disputes these allegations.  However, before Plaintiff's allegations can be considered, a threshold issue must be addressed—this case does not belong before this Court.  Plaintiff enrolled in TCP's My Place Rewards ("MPR") Program in a TCP store on November 22, 2018 and remains a MPR member.  Plaintiff was given notice of the MPR Terms and Conditions (the "Terms and Conditions").  The Terms and Conditions govern the relationship between Plaintiff and TCP and contain a "Binding Arbitration" provision that requires arbitration of any dispute, controversy, or claim between Plaintiff and TCP (the "Arbitration Agreement").  As an active member of TCP's MPR Program who has had notice of the Terms and Conditions since November 22, 2018, Plaintiff agreed to arbitrate this dispute.  As such, TCP respectfully requests this Court enter an order compelling Plaintiff to arbitrate the entire dispute.

**DEF.'S MOTION TO COMPEL ARBITRATION**
**& STAY PROCEEDINGS**
**CASE NO. 2:20-CV-00818**

1.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

II.    BACKGROUND

A.    **The MPR Program and Its Terms and Conditions**

TCP is a specialty apparel retailer that sells products online and in physical stores nationwide and is headquartered in Secaucus, New Jersey. (Complaint ¶¶ 3, 10, 11.) The MPR Program is a customer loyalty program that rewards customers for enrolling and purchasing goods from TCP. (Alzate Decl. ¶ 3, Ex. D.[1]) Customers can learn about the program from signs posted around stores and from store associates. (*Id.* ¶¶ 3–4, Exs. A, B, C.) No purchase is necessary to join, and joining is completely voluntary. (*Id.* ¶ 3, Ex. D.) Membership and participation in the MPR Program is subject to the MPR Terms and Conditions. (*Id.* ¶ 7, Ex. D at T&C 2 ("By enrolling in the Program, you are confirming that you . . . accept these terms and conditions.")

Customers who participate in the MPR Program receive points for shopping at TCP's online and physical stores, which are converted into rewards—such as discounts on future purchases—once customers reach a certain point threshold. (*Id.* at Ex. D at T&C 2 – T&C 4.) Members also receive additional benefits such as the ability to participate in bonus events that allow them to earn extra points. (*Id.* at T&C 2 – T&C 3.) To earn points related to a transaction, customers must provide their MPR membership number when checking out. (*Id.* at T&C 2.) If the customer does not have that available, she can also provide her email address or phone number associated with her MPR account. (*Id.*) Members have the right to cancel their membership at any time. (*Id.* ¶ 10, Ex. D at T&C 5.)

B.    **Plaintiff's Membership and Affirmative Assent to the Terms and Conditions**

1.    **Plaintiff Assented to the Terms and Conditions When She Enrolled in the MPR Program in One of TCP's Physical Stores.**

Plaintiff enrolled in the MPR Program at TCP's store located in Kennewick, Washington on November 22, 2018. (*Id.* ¶ 11.) According to TCP's standard operating procedure in 2018, a Washington customer who wanted to enroll while shopping in a store would provide her full name

---

[1] Exhibit D is a trifold brochure containing the MPR Terms and Conditions.

**DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818**

2.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   and contact information, including an email address, to a store associate to enter into TCP's system

2   so that TCP may communicate with her about the MPR Program.  (*Id.* ¶ 8.)  Under the express

3   terms of the Terms and Conditions, the customer manifested her assent to the Terms and

4   Conditions by enrolling.  (*Id.* ¶ 9, Ex. D at T&C 2.)  As a part of the enrollment process, the

5   customer received a printed copy of the Terms and Conditions along with an enrollment receipt

6   containing the customer's name and her MPR membership number.  (*Id.* ¶ 6.)  After enrolling, new

7   MPR members receive an email to confirm the MPR Program member's email address and a

8   welcome email with, among other things, the customer's MPR Program rewards number.  (*Id.* ¶ 8.)

9   Each of these emails contains a hyperlink to the full text of the Terms and Conditions on the MPR

10  Program of TCP's website.  (*Id.*)

11      Plaintiff provided all of the required information to TCP when she enrolled in TCP's MPR

12  Program on November 22, 2018.  (*Id.* ¶ 11.)  That same day, Plaintiff applied her MPR membership

13  rewards number to a transaction and collected loyalty points on her purchases.  (*Id.* ¶ 12.)  Plaintiff

14  received emails to confirm her email address and welcome her to the MPR program on November

15  23, 2018.  (*Id.* ¶ 13.)  Plaintiff's MPR number was assigned a coupon on two separate occasions.

16  (*Id.* ¶ 14.)  Plaintiff remains a MPR member today.  (*See id.* ¶ 15.)

17      **C.      The Terms and Conditions Contain an Agreement to Arbitrate.**

18      At the very beginning of the Terms and Conditions, there is a statement in all uppercase

19  and bolded type notifying customers about the arbitration provision contained within the Terms

20  and Conditions:

21      **PLEASE NOTE: THESE TERMS AND CONDITIONS CONTAIN AN
        ARBITRATION CLAUSE AND CLASS ACTION WAIVER. THE WAIVER**

22      **AFFECTS HOW DISPUTES WITH THE CHILDREN'S PLACE ARE
        RESOLVED. BY ACCEPTING THESE TERMS AND CONDITIONS, YOU**

23      **AGREE TO BE BOUND BY THIS ARBITRATION PROVISION. PLEASE
        READ IT CAREFULLY.**

24

25  (*Id.* at Ex. D at T&C 1.)

26

DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS                              3.
CASE NO. 2:20-CV-00818

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    The Terms and Conditions also includes a section header in bolded type entitled

2  "**Applicable Law and Mandatory Agreement to Arbitrate on an Individual Basis**." (*Id.* at

3  T&C 5.)  The arbitration provision in the Terms and Condition provides:

4    United States and Puerto Rico: Any and all controversies, disputes, demands,
     counts, claims, or causes of action (including the interpretation and scope of this
5    clause, and the arbitrability of the controversy, dispute, demand, counts, claim, or
     cause of action) between you and the Company or the Company's employees,
6    agents, successors, or assigns, shall exclusively be settled through binding and
     confidential arbitration, except that you or the Company may take claims to small
7    claims court if the dispute qualifies for hearing by such a court. . . .  There is no
     judge or jury in arbitration and arbitration procedures are simpler and more limited
8    than rules applicable in court. . . .

9    You and the Company must abide by these rules: (a) THE ARBITRATION SHALL
     BE CONDUCTED ON AN INDIVIDUAL BASIS AND NOT IN A CLASS,
10   CONSOLIDATED      OR      REPRESENTATIVE      ACTION      AND      THE
     ARBITRATOR SHALL NOT AWARD CLASS-WIDE RELIEF; (b) the Company
11   will pay the arbitration costs as required JAMS rules, and in the event that you are
     able to demonstrate that the costs of arbitration will be prohibitive as compared to
12   costs of litigation, TCP will pay as much of your arbitration filing and hearing fees
     as the arbitrator deems is necessary to prevent the arbitration from being cost-
13   prohibitive as compared to the cost of litigation; (c) the arbitrator may award any
     individual relief or individual remedies that are permitted by applicable law; and
14   (d) each side pays his, her or its own attorneys' fees and costs unless the claim(s)
     at issue permit the prevailing party to be paid its fees and litigation costs, and in
15   such instance, the fees and costs awarded shall be determined by the applicable law.

16  (*Id.* at T&C 5 – T&C 6.)  The arbitration is to be administered by JAMS "pursuant to the JAMS

17  Streamlined Arbitration Rules & Procedures effective July 1, 2014 (the "JAMS Rules") and as

18  modified by this agreement to arbitrate." (*Id.* at T&C 6.)

19    The arbitration provision in the Terms and Conditions also contains a number of features

20  favorable to users to facilitate the resolution of claims, such as: the ability to pursue relief in small

21  claims court, and, if a member demonstrates that the cost of arbitration will be prohibitive as

22  compared to the cost of litigation, TCP will pay as much of the member's arbitration filing and

23  hearing fees as is necessary to prevent the arbitration from being cost-prohibitive. (*Id.*)

24    **D.    Plaintiff's Claims**

25    Plaintiff's claims arise from emails she has allegedly received from TCP since at least

26  March 2019, purportedly "containing false or misleading information in the subject line."

**DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS**                          4.
**CASE NO. 2:20-CV-00818**

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   (Complaint ¶ 22.)   Plaintiff alleges that TCP engages in a false discount advertising scheme

2   because "[f]or nearly all of its products, the list prices and claimed discounts are false and inflated

3   because [TCP] rarely or never offers the products at their stated list price." (*Id.* ¶¶ 13, 15.)   Plaintiff

4   also alleges TCP routinely places signage online and in stores advertising "sales" on certain items,

5   when, in reality, "[f]or nearly all of its products, the list prices and claimed discounts are false and

6   inflated." (*Id.* ¶ 13.)   Plaintiff contends that the majority of items in TCP's online and physical

7   stores are rarely or never sold at the higher list price for any significant length of time. (*Id.*)

8       Plaintiff claims that TCP "has transmitted hundreds of commercial emails containing false

9   or misleading information in the subject line to thousands of Washington State consumers,

10   including Plaintiff." (*Id.* ¶ 22.)   Plaintiff alleges that the emails contain "'XX% Off' statements"

11   that are "false or misleading because the discount amount was false and fabricated based on

12   [TCP's] self-created and inflated fictitious list prices at which Defendant never or rarely ever

13   offered its products." (*Id.* ¶¶ 23–24.)

14      Based on these allegations, Plaintiff filed suit on behalf of a putative Washington class for

15   alleged violations of the Washington Commercial Electronic Mail Act ("CEMA") (RCW 19.190)

16   and the Washington Consumer Protection Act ("CPA") (RCW 19.86).

17   **III.    LEGAL STANDARD FOR COMPELLING ARBITRATION**

18      The Supreme Court has held that Congress enacted the Federal Arbitration Act ("FAA")

19   "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v.*

20   *Concepcion*, 563 U.S. 333, 339 (2011).   The FAA reflects both a "liberal federal policy favoring

21   arbitration," and the "fundamental principal that arbitration is a matter of contract." *Id.*   The FAA

22   applies to any "contract evidencing a transaction involving commerce," and the phrase "involving

23   commerce" is interpreted broadly to apply to any contract "affecting commerce." *See, e.g.*, *Allied-*

24   *Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 276–77 (1995); *Prima Paint Corp. v. Flood &*

25   *Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).   Accordingly, it covers the Terms and Conditions

26   and Plaintiff's alleged purchases here. *See Allied-Bruce*, 513 U.S. at 282 (contract between

DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818

5.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    homeowner in Alabama and multistate company involved in interstate commerce came within the

2    FAA).  Further, the Terms and Conditions expressly incorporate the FAA.  (Alzate Decl. at Ex. D

3    at T&C 6 ( "Arbitration shall be subject to the U.S. Federal Arbitration Act and federal arbitration

4    law.").)  *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008) (parties intended the

5    FAA to apply given that "the arbitration agreement even incorporates [the] FAA").

6           The FAA creates a "body of federal substantive law of arbitrability, applicable to any

7    arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury*

8    *Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also United States v. Fidelity & Deposit of Maryland*,

9    2016 WL 6298790, at *4 (W.D. Wash. Oct. 27, 2016).  With the FAA, Congress sought to

10   guarantee the enforcement of arbitration agreements and to prevent parties thereto from avoiding

11   their contractual obligations to arbitrate.  *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219–20

12   (1985).  To that end, the FAA provides that any arbitration agreement within its scope "**shall be**

13   **valid, irrevocable, and enforceable**[.]"  9 U.S.C. § 2 (emphasis added); *AT&T Mobility*, 563 U.S.

14   at 344 ("The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the

15   enforcement of arbitration agreements according to their terms so as to facilitate streamlined

16   proceedings."); *see also Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822, at *3 (W.D. Wash.

17   Nov. 19, 2019).

18          "On a motion to compel arbitration, the court's role under the FAA is generally 'limited to

19   determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

20   agreement encompasses the dispute at issue.'"  *Id.* at *3 (quoting *Chiron Corp. v. Ortho Diagnostic*

21   *Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  If the answer to both questions is "yes," the court is

22   required to enforce the arbitration agreement.  *Dean Witter Reynolds*, 470 U.S. at 218 (where

23   dispute is within scope of a valid arbitration agreement, the FAA "leaves no place for the exercise

24   of discretion"); *see also Ekin v. Amazon Svcs., LLC*, 84 F. Supp. 3d 1172, 1175 (W.D. Wash. Dec.

25   10, 2014) ("If both of these two prongs are fulfilled, then the FAA 'leaves no place for the exercise

26

DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS                                             6.
CASE NO. 2:20-CV-00818

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   of discretion by a district court, but instead mandates that district courts *shall* direct the parties to

2   proceed to arbitration'" (emphasis in original) (quoting *Chiron Corp.*, 207 F.3d at 1130).).

3   **IV.    PLAINTIFF SHOULD BE COMPELLED TO INDIVIDUALLY ARBITRATE HER**
        **CLAIMS.**

4

5        Plaintiff should be compelled to arbitrate her claims because: (1) there is a valid agreement

6   to arbitrate, and (2) this dispute falls within the Arbitration Agreement's broad scope.

7        **A.    Plaintiff Entered Into a Valid Arbitration Agreement with TCP.**

8        The first question the Court must answer is whether a valid arbitration agreement exists.

9   The answer to this question is "yes" because Plaintiff agreed to the Terms and Conditions, which

10  contain a valid arbitration agreement, when she enrolled in the MPR program.

11            **1.    Plaintiff Assented to the Terms and Conditions Containing an**
                 **Arbitration Provision.**

12

13       "It is well established 'that where the contract contains an arbitration clause, there is a

14  presumption of arbitrability.'" *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th

15  Cir. 2009) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

16  Courts must compel arbitration where a valid agreement to arbitrate exists because "courts must

17  place arbitration agreements on equal footing with other contracts, and enforce them according to

18  their terms." *AT&T Mobility*, 563 U.S. at 339 (citations omitted); *see also Harbers*, 2019 WL

19  6130822, at *3 (quoting *AT&T Mobility*, 563 U.S. at 339).  In the Ninth Circuit, "the most minimal

20  indication of the parties' intent to arbitrate must be given full effect." *Peters v. Amazon Svcs. LLC*,

21  2 F. Supp. 3d 1165, 1169 (W.D. Wash. 2013) (quoting *Rep. of Nicaragua v. Standard Fruit Co.*,

22  937 F.2d 469, 478 (9th Cir. 1991)).

23       A district court applies "ordinary state-law principles that govern the formation of

24  contracts" to decide whether an agreement to arbitrate exists.  *See Norcia v. Samsung Telecomms.*

25  *Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514

26  U.S. 938, 944 (1995)).  General principles of contract law determine whether the parties have

DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818

7.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   entered into a binding agreement to arbitrate. *First Options of Chi., Inc.*, 514 U.S. at 944. "Under

2   Washington law, in order to form a valid contract, the contract parties must 'objectively manifest

3   their mutual assent.'" *Harbers*, 2019 WL 6130822, at *6 (quoting *Keystone Land & Dev. Co. v.

4   Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004)); *see also Yakima Cty. (W. Valley) Fire Prot. Dist.

5   No. 12 v. Yakima*, 858 P.2d 245, 255 (1993) (en banc) (noting that, under Washington law, a

6   contract exists where the parties mutually assent to the terms of the agreement). Washington courts

7   hold that where a party has signed a contract without reading it, that party cannot argue lack of

8   mutual assent if the party "was not deprived of the opportunity to read the contract, the contract

9   was 'plain and unambiguous', the party was capable of understanding the contract, and no fraud,

10   deceit, or coercion occurred." *Yakima Cty.*, 858 P.2d at 255 (citing *Skagit State Bank v.

11   Rasmussen*, 745 P.2d 37, 39–41 (Wash. 1987) (en banc)). Here, Plaintiff agreed to arbitrate her

12   claims.

13          a.      **Plaintiff Had Notice of the Arbitration Provision in the Terms

14                  and Conditions.**

15          Plaintiff had notice of the Terms and Conditions when she enrolled in the MPR Program.

16   At the time Plaintiff enrolled in the MPR Program, TCP's Washington stores had signs posted all

17   over the stores that advertised the MPR Program and directed customers to "please visit

18   childrensplace.com/rewards-terms" for the "full Rewards Terms and Conditions." (Alzate Decl.

19   ¶¶ 3–4, Exs. A, C.) Moreover, it was TCP's standard practice to hand customers a printed copy of

20   the Terms and Conditions along with their enrollment receipt when they enrolled in the MPR

21   Program. (*Id.* ¶ 6.) *See Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035, at *3 n.2 (W.D.

22   Wash. May 25, 2017) ("[E]vidence of a consistent practice of delivering agreements is 'prima facie

23   evidence that [a consumer is] aware' of the offer" (quoting *Schwartz v. Comcast Corp.*, 256 F.

24   App'x 515, 518 (3d Cir. 2007) (concluding plaintiff had reasonable notice of arbitration provision

25   within Comcast's subscription agreement where Comcast produced evidence that its standard

26   practice was to give new customers copy of agreement)).). It was also standard practice for TCP

**DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818**                                    8.                          COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    to send an email to any newly enrolled member of the MPR Program to confirm the member's

2    email address and welcome the new member to the program.  (Alzate Decl. ¶ 8.)  These emails

3    contained hyperlinks to the full text of the Terms and Conditions on the MPR Program webpage

4    of TCP's website.  (*Id.*)

5         Plaintiff was not deprived of the opportunity to read the Terms and Conditions, and the

6    Terms and Conditions were plain and unambiguous with regard to Plaintiff's agreement to be

7    bound by the arbitration provision.  Washington courts have found in similar circumstances that

8    plaintiffs have assented to such contracts even if they did not read the contract.  *E.g.*, *Schmidt*,

9    2017 WL 2289035, at *2–3 (holding that plaintiffs assented to arbitration because they were given

10   reasonable notice of the agreement where a product's box warned of "additional Samsung terms

11   and conditions," the box contained a brochure warning the reader that "by using this device, you

12   accept those [contained] terms and conditions," and the brochure included the arbitration

13   agreement and opt-out provisions); *see also M.A. Mortensen Co. v. Timberline Software Corp.*,

14   998 P.2d 305, 308–09, 313 (Wash. 2000) (finding that Washington law "allow[ed] a contract to be

15   formed 'in any manner sufficient to show agreement,'" and thus plaintiff's "use of the software

16   constituted its assent to the agreement including the license terms").

17        The Terms and Conditions provided to Plaintiff also explicitly told Plaintiff at the outset

18   in uppercase and bolded type that the Terms and Conditions contain an arbitration provision and a

19   class action waiver.  (Alzate Decl. at Ex. D at T&C 1.)  The statement informed Plaintiff that the

20   waiver affects how disputes with TCP will be resolved, and that acceptance of the Terms and

21   Conditions means Plaintiff agreed to be bound by the arbitration provision.  (*Id.*)  Finally, it told

22   Plaintiff to read the arbitration provision carefully.  (*Id.*)

23        In *Schmidt*, the Court found that even where the agreement was not directly visible on the

24   outside of the product's box, "Plaintiffs could have opened the box to find the agreement, read and

25   disagreed with the terms, and then returned the device (or opted out)."  2017 WL 2289035, at *3.

26   By not doing so, and by using the product, "Plaintiffs assented to arbitration under Washington

DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818

9.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   law." *Id.*  Here, according to TCP's standard operating procedures, Plaintiff would have been

2   directly handed a printed copy of the Terms and Conditions upon enrollment in the MPR Program

3   and, a day after enrolling, received at least two emails with hyperlinks to the full text of the Terms

4   and Conditions. (Alzate Decl. ¶¶ 6, 8.)  Moreover, Plaintiff benefitted from her MPR membership

5   by collecting loyalty points and coupons. (*Id.* ¶ 12.)  Plaintiff therefore was on notice that her use

6   of the MPR Program would be subject to certain terms.  Thus, Plaintiff is deemed to have notice

7   of the Arbitration Agreement because she accepted benefits from the MPR Program knowing they

8   were subject to terms, and failed to opt out of those terms.

9          Finally, the Arbitration Agreement has always been clear and conspicuous within the

10  Terms and Conditions, and Plaintiff has had plenty of time to review it.  Courts in this circuit have

11  concluded that less conspicuous disclosures are sufficient to provide customers notice to manifest

12  mutual assent. *E.g.*, *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069 (S.D. Cal. 2015)

13  (finding plaintiffs were on sufficient notice of the existence and contents of the arbitration

14  agreement even where text of the notice is smaller than the text beneath it, particularly when the

15  text is placed at the top of the checkout page and set off in blue-colored font); *see also Harbers*,

16  2019 WL 6130822, at *7.  Here, the statements regarding the arbitration provision and class action

17  waiver are presented in all uppercase type to draw attention to the information, and a notice

18  informing Plaintiff of these provisions was presented at the top of the very first page of the Terms

19  and Conditions, also in bold and uppercase type. (Alzate Decl. at Ex. D at T&C 1, T&C 6.)  Thus,

20  Plaintiff had notice that she was waiving her right to judicial action.

21         Plaintiff also had many opportunities to review the Terms and Conditions.  Not only are

22  customers ordinarily handed a printed copy when they enroll in TCP's MPR Program in store, but

23  Plaintiff received emails with hyperlinks to the Terms and Conditions on TCP's website, where

24  they are easy to find. (*Id.* ¶¶ 6, 8, 16, 17, Ex. E.)  Moreover, the Terms and Conditions Plaintiff

25  received informed Plaintiff that the terms were published in the MPR section of TCP's website,

26  and that Plaintiff was responsible for remaining knowledgeable about the terms. (*Id.* at Ex. D.)

DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818

10.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   Therefore, from the date Plaintiff enrolled in TCP's MPR Program on November 22, 2018,

2   Plaintiff could have read the Terms and Conditions at any time.  *See M.A. Mortenson Co.*, 998

3   P.2d at 313 (adopting the 7th Circuit's holding in *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th

4   Cir. 1997), that "the terms of the 'accept-or-return' agreement were effective, stating, '[c]ompetent

5   adults are bound by such documents, *read or unread*" (emphasis added)); *Harbers*, 2019 WL

6   6130822, at *7 ("Courts have rejected the argument that there was no mutual assent on the grounds

7   that a party failed to read or fails to remember the terms of a contract."); *Schmidt*, 2017 WL

8   2289035, at *2–3 ("Plaintiffs had . . . adequate notice that additional terms and conditions existed,

9   and should have read further to inquire.").  Thus, TCP and the Terms and Conditions gave Plaintiff

10  notice that her participation in the MPR Program would waive her right to maintain a court action

11  or participate in a class action against TCP.

12              **b.       Plaintiff Unambiguously Manifested Her Assent to the Terms
                            and Conditions.**
13

14          By enrolling in the MPR Program and using her membership number to collect loyalty

15  points for rewards, Plaintiff unambiguously manifested her assent to the Terms and Conditions.

16  (Alzate Decl. ¶¶ 9, 11, 12.)  The Court's opinion in *Schmidt* is instructive.  There, the Court found

17  that the plaintiff assented to the arbitration agreement under either Washington or California law,

18  where the cell phone packaging box contained a brochure stating, "by using this device, you accept

19  those [contained] terms and conditions" and plaintiff could have opened the box to find and read

20  the agreement's terms.  2017 WL 2289035, at *3.

21          Here, the Terms and Conditions provide that "[b]y enrolling in the Program, . . . you accept

22  these terms and conditions[.]"  (Alzate Decl. Ex. D at T&C 2.)  Plaintiff voluntarily enrolled in the

23  MPR Program and collected loyalty points using her membership number in store on November

24  22, 2018.  (*Id.* ¶ 12.)  Plaintiff has not cancelled her membership.  (*Id.* ¶ 15.)  Thus, as in *Schmidt*,

25  by using the Program, Plaintiff "manifest[ed] [her] intent to be bound pursuant to the unambiguous

26  [] terms of the Program."  2017 WL 2289035, at *3; *see also* Restatement (Second) of Contracts

DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818                    11.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

§ 30 (Am. Law Inst. 1981) ("An offer may invite or require acceptance to be made by an affirmative answer in words, **or by performing . . . a specified act**." (emphasis added)).  Plaintiff agreed to the Terms and Conditions, including the arbitration clause and class action waiver, when she enrolled in TCP's MPR Program on November 22, 2018 and provided her email address to TCP.  If Plaintiff did not want to agree to the terms, she could have simply chosen not to enroll in the MPR Program or she could have canceled her membership at any time.  Notably, Plaintiff did not need to enroll in TCP's MPR Program in order to shop at TCP.  (Alzate Decl. ¶ 3.)

## 2.     The Arbitration Agreement Contains a Valid Delegation Clause.

Any contention that the Arbitration Agreement or the Terms and Conditions are invalid or unenforceable should be rejected.  Plaintiffs bear the burden for any such contention.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000) ("The party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue.").  Here, Plaintiff cannot meet her burden in opposing this motion because the Arbitration Agreement properly delegates the determination of such questions to the arbitrator.

The parties agreed that issues of enforceability and validity are to be decided by the arbitrator in arbitration.  *Rent-A-Ctr., W, Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010) ("Section 2 [of the FAA] operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce.  Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *Krause v. Expedia Grp., Inc.*, 2019 WL 4447317, at *4 (W.D. Wash. Sept. 17, 2019) ("Parties may delegate 'gateway' questions of arbitrability to an arbitrator" (citations omitted).); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526 (2019) ("[W]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract, even if the court thinks that the arbitrability claim is wholly groundless.").

DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS
CASE NO. 2:20-CV-00818

12.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    Here, the Arbitration Agreement in the MPR Program Terms and Conditions clearly and

2  unmistakably provides:  "Any and all controversies, disputes, demands, counts, claims, or causes

3  of action (including the interpretation and scope of this clause, and the arbitrability of the

4  controversy, dispute, demand, counts, claim, or cause of action) between you and the

5  Company . . . shall exclusively be settled through binding and confidential arbitration."  (Alzate

6  Decl. at Ex. D at T&C 5, Ex. E.)  Courts have held that similarly broad language delegates issues

7  of enforceability and validity to the arbitrator.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th

8  Cir. 2015) (holding that incorporation of reference to the AAA rules in a delegation clause

9  "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate

10  arbitrability"); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (upholding

11  a delegation clause expansively delegating to the arbitrators the authority to decide issues relating

12  to the "enforceability, revocability or validity of the Arbitration Provision or any portion of the

13  Arbitration Provision").

14    As such, any enforceability or validity argument that Plaintiff might raise would not

15  properly be before this Court.

16    **B.    Plaintiff's Claims Are Within the Scope of the Arbitration Agreement.**

17    The second question for the Court in connection with this motion to compel arbitration is

18  whether the Arbitration Agreement encompasses this dispute.  Here, the parties have delegated the

19  issue of the scope of the Arbitration Agreement to the arbitrator to decide.  (Alzate Decl. at Ex. D

20  at T&C 5, E.)  As such, the answer to the question is "yes."  The issue of scope provides no hurdle

21  to TCP's motion.

22    Because the FAA reflects a "liberal federal policy favoring arbitration agreements, the

23  Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be

24  resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24–25.  "Courts must indulge every

25  presumption 'in favor of arbitration, whether the problem at hand is the construction of the contract

26  language itself or an allegation of waiver, delay, or a like defense to arbitrability.'"  *Zuver v.*

**DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS**
**CASE NO. 2:20-CV-00818**

13.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   *Airtouch Commc'ns, Inc.*, 103 P.3d 753, 759 (Wash. 2004) (en banc) (quoting *Moses H. Cone*, 460

2   U.S. at 25); *see also see also JP Morgan Chase Bank, N.A. v. Jones*, 2016 WL 1182153, at *8

3   (W.D. Wash. Mar. 28, 2016).   "[A]rbitration clauses have a presumption of arbitrability that

4   'should not be denied unless it may be said with positive assurance that the arbitration clause is

5   not susceptible of an interpretation that covers the asserted dispute.'"   *JP Morgan*, 2016 WL

6   1182153, at *8 (citation omitted).   This extends to the alleged statutory violations Plaintiff asserts

7   here given the Arbitration Agreement's broad language.

8         The claims in this action are all between Plaintiff and TCP.   The MPR Program Terms and

9   Conditions provide for arbitration of "[a]ny and all controversies, disputes, demands, counts,

10   claims, or causes of action . . . **between you and the Company**."   (Alzate Decl. at Ex. D at T&C

11   5 (emphasis added), Ex. E.).   Plaintiff's claims concerning her purchase from TCP and emails she

12   allegedly received from TCP fall squarely within this scope.   "[F]ar reaching" provisions such as

13   TCP's are "routinely used . . . to secure the broadest possible arbitration coverage."   *Britton v. Co-*

14   *op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993); *see also Chiron Corp*, 207 F.3d at 1131 (same);

15   *Alaska Protein Recovery, LLC v. PureTek Corp.*, 2014 WL 2011235, at *3–4 (W.D. Wash. 2014).

16   Plaintiff's claims are plainly covered under the Arbitration Agreement, and Plaintiff should thus

17   be compelled to arbitrate her claims.

18         **C.      This Action Should Be Stayed Pending Arbitration.**

19         Federal law empowers courts to stay proceedings pending the completion of arbitration.

20   *See* 9 U.S.C. § 3.   Under the FAA, "[a] court *must* stay its proceedings if it is satisfied that an issue

21   before it is arbitrable[.]"   *Shearson Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)

22   (emphasis added).   Moreover, the Ninth Circuit Court of Appeals has "adopt[ed] a rebuttable

23   presumption that an order compelling arbitration but not explicitly dismissing the underlying

24   claims stays the action."   *Ekin v. Amazon Svcs., LLC*, 2015 WL 11233144, at *1 (W.D. Wash. Feb.

25   10, 2015) (quoting *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014)).   Because

26   Plaintiff's claims fall within the scope of a valid arbitration agreement, this action should be stayed

DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS                                     14.
CASE NO. 2:20-CV-00818

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    pending arbitration. *Diaz v. Nintendo of Am. Inc.*, 2020 WL 996859, at \*1–2 (W.D. Wash. Mar.

2    2, 2020); *see also* 9 U.S.C. § 3 (where suit involves "any issue referable to arbitration," the court

3    shall stay the suit until arbitration is completed).

4    **V.    CONCLUSION**

5          For the foregoing reasons, TCP respectfully requests that this Court compel individual

6    arbitration of Plaintiff's claims, as well as stay this case pending the arbitration.

7

8    Dated:        July 10, 2020

9                                              */s/ Christopher B. Durbin*
                                               Christopher B. Durbin (WSBA No. 41159)
10                                             COOLEY LLP
                                               1700 Seventh Avenue
11                                             Suite 1900
                                               Seattle, WA  98101-1355
12                                             Telephone: (206) 452-8700
                                               Fax: (206) 452-8800
13                                             Email: cdurbin@cooley.com

14                                             Michelle C. Doolin (CA Bar No. 179445)
                                               (*admitted pro hac vice*)
15                                             Sophia M. Rios (CA Bar No. 305801)
                                               (*admitted pro hac vice*)
16                                             COOLEY LLP
                                               4401 Eastgate Mall
17                                             San Diego, CA 92121
                                               Telephone: (858) 550-6000
18                                             Fax: (858) 550-6420
                                               Email:  mdoolin@cooley.com
19                                                       srios@cooley.com

20                                             Attorneys for Defendant THE CHILDREN'S PLACE,
                                               INC.

21

22

23

24

25

26

**DEF.'S MOTION TO COMPEL ARBITRATION
& STAY PROCEEDINGS**
**CASE NO. 2:20-CV-00818**                          15.                          COOLEY LLP
                                                                   1700 SEVENTH AVE., SUITE 1900
                                                                   SEATTLE, WA 98101-1355
                                                                   (206) 452-8700